FILED

June 13, 2022

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____   JU

DEPUTY

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **BENJAMIN PAUL POEHLMANN,** | § | |
| **TDCJ No. 02128755,** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **CIVIL NO. SA-20-CA-0777-OLG** |
| | § | |
| **BOBBY LUMPKIN, Director,** | § | |
| **Texas Department of Criminal Justice,** | § | |
| **Correctional Institutions Division,** | § | |
| | § | |
| **Respondent.** | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are *pro se* Petitioner Benjamin Poehlmann's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Dkt. No. 1) and memorandum in support (Dkt. No. 2), Respondent Bobby Lumpkin's Answer (Dkt. No. 17), and Petitioner's Reply (Dkt. No. 26) thereto. Having reviewed the record and pleadings submitted by both parties, the Court concludes that Petitioner is not entitled to relief under the standards prescribed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *See* 28 U.S.C. § 2254(d). Petitioner is also denied a certificate of appealability.

## I. **Background**

The facts of Petitioner's case were accurately summarized by the Texas Fourth Court of Appeals on direct appeal:

> On December 25, 2014, San Antonio police officers responded to a 9–1–1 call, reporting a shooting in progress at a home where [Petitioner], his girlfriend Roxann Sanchez, and his sister Christina lived. [Petitioner] and Roxann lived in an addition to the house, which was located next to the kitchen of the main house and could only be accessed from the kitchen. The addition was comprised of a small living area, bedroom, and bathroom. The living area and bedroom were separated by a wall and a door, and the bathroom was accessible only by way of the bedroom.

When officers arrived, they entered the main part of the house and found Roxann lying on her stomach on the floor between the kitchen of the main house and living area of the addition.  [Petitioner], who is a paraplegic, was sitting on the floor with Roxann.  His wheelchair was overturned in his bedroom.  Officers described [Petitioner] as crying and screaming.

The evidence showed Roxann had been struck by a bullet, which entered her back and exited her upper chest.  A nine-millimeter Glock handgun, along with a spent shell casing, was found on the floor in the bedroom of the addition.  Police also discovered a gunshot hole in the wall between the living area and bedroom of the addition.  [Petitioner] was arrested and ultimately charged with felony murder[1] and murder.

*Poehlmann v. State*, No. 04-17-00148-CR, 2018 WL 2222201, at *1 (Tex. App.—San Antonio, May 16, 2018, pet. ref'd); Dkt. No. 16-17.  After hearing all the evidence, a Bexar County jury convicted Petitioner of murder in March 2017; Petitioner was sentenced to thirty-five years of imprisonment.  *State v. Poehlmann*, No. 2015CR10018 (187th Dist. Ct., Bexar Cnty., Tex. Mar. 8, 2017); Dkt. No. 16-2 at 156–57.

The Texas Fourth Court of Appeals affirmed Petitioner's conviction and sentence in an unpublished opinion on direct appeal.  *Poehlmann*, 2018 WL 2222201; Dkt. No. 16-17.  The Texas Court of Criminal Appeals then refused his petition for discretionary review on July 25, 2018.  *Poehlmann v. State*, No. 0585-18 (Tex. Crim. App.); Dkt. No. 16-1.  Thereafter, Petitioner challenged the constitutionality of his conviction by filing an application for state habeas corpus relief.  *Ex parte Poehlmann*, No. 90,934-01 (Tex. Crim. App.); Dkt. No. 16-23 at 5–58.  Based, in part, on the findings of the state habeas trial court, the Texas Court of Criminal Appeals eventually denied the application without written order.  Dkt. No. 16-22.

Petitioner initiated the instant proceedings by filing a petition for federal habeas relief on June 24, 2020.  Dkt. No. 1 at 11.  In the petition and supplemental memorandum filed with it,

---

[1]      It is undisputed that at the time of the shooting, [Petitioner] was a felon.  Thus, the indictment alleged [Petitioner], having been previously convicted of a felony offense, committed the felony offense of felon in possession of a firearm while in the course of shooting Roxann and causing her death.

Petitioner raises the same allegations that were rejected by the Texas Court of Criminal Appeals during his direct appeal and state habeas proceedings:

(1) his trial counsel rendered ineffective assistance during voir dire by allowing a biased juror to sit on the jury due to counsel's failure to know the correct number of peremptory challenges available to him;

(2) the Texas Fourth Court of Appeals improperly denied his direct appeal;

(3) trial counsel rendered ineffective assistance by failing to adequately investigate, call relevant witnesses, or properly cross-exam the prosecution's expert witnesses;

(4) the cumulative effect of trial counsel's errors rendered his trial fundamentally unfair;

(5) the prosecution committed misconduct by failing to produce potentially exculpatory evidence and by presenting misleading evidence concerning the crime scene; and

(6) the trial court erred in denying the defense's motion for a lesser-included offense instruction.

## II. <u>Standard of Review</u>

Petitioner's federal habeas petition is governed by the heightened standard of review provided by the AEDPA. 28 U.S.C.A. § 2254. Under § 2254(d), a petitioner may not obtain federal habeas corpus relief on any claim that was adjudicated on the merits in state court proceedings unless the adjudication of that claim either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Brown v. Payton*, 544 U.S. 133, 141 (2005). This intentionally difficult standard stops just short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (citing *Felker v. Turpin*, 518 U.S. 651, 664 (1996)).

A federal habeas court's inquiry into unreasonableness should always be objective rather than subjective, with a focus on whether the state court's application of clearly established federal law was "objectively unreasonable" and not whether it was incorrect or erroneous. *McDaniel v. Brown*, 558 U.S. 120 (2010); *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003). Even a strong case for relief does not mean that the state court's contrary conclusion was unreasonable, regardless of whether the federal habeas court would have reached a different conclusion itself. *Richter*, 562 U.S. at 102. Instead, a petitioner must show that the decision was objectively unreasonable, which is a "substantially higher threshold." *Schriro v. Landrigan,* 550 U.S. 465, 473 (2007); *Lockyer v. Andrade*, 538 U.S. 63, 75–76 (2003).

So long as "fairminded jurists could disagree" on the correctness of the state court's decision, a state court's determination that a claim lacks merit precludes federal habeas relief. *Richter*, 562 U.S. at 101 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In other words, to obtain federal habeas relief on a claim previously adjudicated on the merits in state court, Petitioner must show that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 103; *see also Bobby v. Dixon*, 565 U.S. 23, 24 (2011).

### III.  Merits Analysis

A.  **Trial Counsel's Representation (Claims 1, 3, and 4)**

Several of Petitioner's claims for relief allege he was denied the right to effective assistance of counsel. Specifically, Petitioner claims that his trial counsel: (1) did not know the correct number of peremptory challenges available to him during voir dire and allowed a biased juror to serve on the jury, (2) failed to adequately investigate or preserve evidence, and (3) failed to call

witnesses or adequately cross-examine the prosecution's expert witnesses.  Petitioner also asserts that the cumulative effect of trial counsel's errors rendered his trial fundamentally unfair.

Each of these allegations were raised during Petitioner's state habeas proceedings and rejected by the Texas Court of Criminal Appeals.  As discussed below, Petitioner fails to demonstrate the state court's rejection of these allegations was either contrary to, or an unreasonable application of, Supreme Court precedent.

1.    The *Strickland* Standard

Sixth Amendment claims concerning the alleged ineffective assistance of trial counsel (IATC claims) are reviewed under the familiar two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984).  Under *Strickland*, a petitioner cannot establish a violation of his Sixth Amendment right to counsel unless he demonstrates (1) counsel's performance was deficient and (2) this deficiency prejudiced his defense.  466 U.S. at 687–88, 690.  According to the Supreme Court, "[s]urmounting *Strickland*'s high bar is never an easy task."  *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

When determining whether counsel performed deficiently, courts "must be highly deferential" to counsel's conduct, and a petitioner must show that counsel's performance fell beyond the bounds of prevailing objective professional standards.  *Strickland,* 466 U.S. at 687–89.  Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Burt v. Titlow*, 571 U.S. 12, 22 (2013) (quoting *Strickland*, 466 U.S. at 690).  To demonstrate prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  Under this prong, the "likelihood of a different result must be substantial, not just conceivable."  *Richter*, 562 U.S. at

112.  A habeas petitioner has the burden of proving both prongs of the *Strickland* test.  *Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

Finally, IATC claims are considered mixed questions of law and fact and are analyzed under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1).  *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010).  Where, as here, the state court adjudicated the IATC claims on the merits, a court must review a petitioner's claims under the "doubly deferential" standards of both *Strickland* and Section 2254(d).  *See Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (citing *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011)); *Knowles v. Mirzayance*, 556 U.S. 111, 112 (2009).  In such cases, the "pivotal question" is not "whether defense counsel's performance fell below *Strickland*'s standards," but whether "the state court's application of the *Strickland* standard was unreasonable."  *Richter*, 562 U.S at 101.  That is to say, the question to be asked in this case is not whether counsel's actions were reasonable, but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Id*. at 105.

2.     <u>Voir Dire</u>

Petitioner first contends that his trial counsel, David Woodard, provided ineffective representation during voir dire.  Petitioner states that counsel did not know the correct number of peremptory challenges available to the defense and tendered an incorrect number of strikes to the trial court.  According to Petitioner, this led to "one of the most biased members of the jury pool"—prospective juror No. 11—serving as a juror.

Petitioner raised this allegation during his state habeas proceedings.  In response, counsel submitted an affidavit addressing Petitioner's assertions of ineffective assistance.  Dkt. No. 16-23 at 86.  Counsel stated that Petitioner's allegation was "blatantly false" and pointed out that he "used ten (10) peremptory challenges and provided the challenges to the District Clerk."  *Id*.  The

state habeas trial court found trial counsel's affidavit to be credible and concluded that Petitioner failed to prove that counsel was ineffective under the *Strickland* standard.  Dkt. No. 16-24 at 45–51.  These findings and conclusions were adopted by the Texas Court of Criminal Appeals when it denied Petitioner's state habeas application.  Dkt. No. 16-22.  These determinations, including the trial court's credibility findings, are entitled to a presumption of correctness unless they lack fair support in the record.  *Demosthenes v. Baal*, 495 U.S. 731, 735 (1990); *Miller v. Thaler*, 714 F.3d 897, 903 (5th Cir. 2013).

Petitioner fails to show that the state court's ruling on trial counsel's performance at voir dire was contrary to, or involved an unreasonable application of *Strickland* or that it was an unreasonable determination of the facts based on the evidence in the record.  To start, the record confirms counsel's statement that he was aware of the correct number of peremptory challenges (ten) and submitted those challenges to the trial court.  *See* Dkt. No. 16-9 at 89–92.  While counsel did express misgivings to the trial court about how he ordered the peremptory challenges that were submitted—stating that prospective juror No. 11 would have been included had he numbered his strike list correctly—the record is clear that counsel was aware that he only had ten peremptory challenges to use.  *Id*. at 90.

Further, the record does not support Petitioner's assertion that a biased juror sat on the jury because of counsel's failure to correctly number his preferred strikes.  In the context of determining whether the failure to strike an allegedly partial juror constitutes deficient performance, a court must first evaluate whether the juror at issue was actually biased.  *Virgil v. Dretke*, 446 F.3d 598, 608–10 (5th Cir. 2006); *see also Seigfried v. Greer*, 372 Fed. App'x 536, 539 (5th Cir. 2010) (unpublished).  The bias determination centers on a juror's own indication that he has "such fixed opinions that he could not judge impartially respondent's guilt."  *Patton v. Yount*, 467 U.S. 1025,

1035 (1984); *Virgil*, 446 F.3d at 607 (holding that "the Supreme Court's treatment of the right to an impartial jury is more than a mere backdrop to our analysis; it is the lens through which we must examine counsel's performance in this case") (citation omitted).  It is Petitioner's burden to prove that a biased juror served on his jury.  *See Smith v. Phillips*, 455 U.S. 209, 215 (1982) (stating that prospective jurors are presumed impartial).

Here, Petitioner argues that he was prejudiced by counsel's failure to strike prospective juror No. 11 because she was "one of the venire members most hostile to the [defense]."  Dkt. No. 2 at 13.  Yet Petitioner offers no evidence or argument to substantiate his claim that prospective juror No. 11 was biased.  Petitioner's failure to provide any evidence of actual bias violates Rule 2(c) of the Rules Governing Section 2254 Cases, which requires a petitioner to plead facts in support of his claims.  It is Petitioner's burden to show that he is entitled to relief, and the Fifth Circuit has consistently held that a petitioner's conclusory, self-serving allegations will not merit habeas relief.  *Beazley v. Johnson,* 242 F.3d 248, 270 (5th Cir. 2001) (conclusory allegations will not support federal habeas relief); *Fahle v. Cornyn*, 231 F.3d 193, 196–97 (5th Cir. 2000) (self-serving allegations do not merit relief).

Moreover, the record does not demonstrate that prospective juror No. 11 had "such fixed opinions that [she] could not judge impartially [Petitioner]'s guilt."  *Patton*, 467 U.S. at 1035; *Virgil*, 446 F.3d at 608–10.  While expressing concerns during individual questioning about seeing pictures of a murder, prospective juror No. 11 ultimately confirmed that she could listen to the evidence and render a verdict based solely on the evidence presented at trial.  Dkt. No. 16-9 at 62–63, 72–75, 82–83.  She also confirmed that she would not lower the State's burden of proof based on her initial apprehension.  *Id*. at 83.  Thus, contrary to Petitioner's assertion, counsel's failure to strike prospective juror No. 11 did not result in a biased juror being allowed onto the jury.

In sum, Petitioner has not pointed to any evidence rebutting counsel's factual assertions, much less demonstrated that the state court's ruling on trial counsel's performance "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. Consequently, viewing this allegation under the deferential standard that applies on federal habeas review, Petitioner has not shown that the state court's decision was objectively unreasonable or that he is entitled to relief on his IATC claim. Habeas corpus relief is therefore denied.

3.    Counsel's Investigation

Petitioner next asserts that counsel was ineffective for failing to adequately investigate or preserve evidence. Specifically, Petitioner faults counsel for failing to uncover or utilize evidence that would support a defense of accidental discharge, including evidence that the type of firearm involved in this offense—a Glock nine-millimeter handgun—is known for its light trigger pull and propensity for inadvertent discharges. Petitioner also contends that counsel failed to adequately investigate evidence showing that he could not have intended to murder the victim because the gun was fired into a wall where the bullet was deflected before it hit the victim. Such evidence includes the results from 3D scan taken by law enforcement that reconstructed the crime scene, as well as the portion of the wall that the bullet passed through prior to striking the victim.

During Petitioner's state habeas proceedings, counsel submitted an affidavit addressing Petitioner's assertions concerning his investigation. Dkt. No. 16-24 at 1–3. The following is an excerpt from Mr. Woodard's affidavit:

> [Petitioner] was charged, indicted and convicted of killing Roxann Sanchez on December 25, 2014 in his home at 4302 First View Drive, San Antonio, Texas 78217. [Petitioner] fired a hand gun in Roxann's direction and killed her. [Petitioner], Roxann, and Christina Poehlmann were the only persons present inside of the home at the time of the shooting. In representing [Petitioner], Counsel went to the murder scene on January 16, 2017 to view the layout of the home and speak

with Christina.  Counsel was able to go into [Petitioner]'s bedroom where the shot was fired and inspect the room.  Counsel was also able to see where the bullet travelled and ultimately where Roxann was located in the home when she was killed.  Counsel also spoke in depth with Christina about the events that transpired that day that lead up to the murder.

\* \* \*

During the course of representing [Petitioner] he told me that the weapon malfunctioned and discharged by itself.  I tried to explain to him that all the reports that I received during the course of discovery showed that the weapon was in working order.  The State called a firearm expert, Mr. Ed Wallace, to testify regarding the condition of the weapon.  Mr. Wallace testified that he weapon that [Petitioner] fired on December 24, 2015 was in proper working condition.  During cross examination, [Petitioner] instructed Counsel to ask if the weapon was defective and could have accidently discharged.  Prior to asking Mr. Wallace that question I informed [Petitioner] that it was not a good question to ask. [Petitioner] instructed me to ask the question and I followed his instruction.  Mr. Wallace responded that the weapon was in no way defective and would not have discharged without a person pulling the trigger.  [Petitioner] never denied being the person that fired the weapon that killed Roxann.

*Id*. at 1–2.

Again, the state habeas trial court found trial counsel's affidavit to be credible and concluded that Petitioner failed to prove that counsel was ineffective.  Dkt. No. 16-24 at 45–51.  The Texas Court of Criminal Appeals adopted these findings and conclusions when it denied Petitioner's state habeas application.  Dkt. No. 16-22.  As discussed below, Petitioner fails to show that the state court's ruling on trial counsel's investigation was contrary to, or involved an unreasonable application of *Strickland* or that it was an unreasonable determination of the facts based on the evidence in the record.

Under *Strickland*, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.  466 U.S. at 690–91; *Charles v. Stephens*, 736 F.3d 380, 389 (5th Cir. 2013).  Counsel must, at minimum, interview potential witnesses and make an independent investigation of the facts and circumstances of the case.  *Kately v. Cain*, 704 F.3d 356, 361 (5th Cir. 2013).  However, a particular decision not to investigate must

be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments. *Strickland*, 466 U.S. at 699. Thus, in order to establish that counsel was rendered ineffective by virtue of a failure to investigate, a convicted defendant must do more than merely allege a failure to investigate; he must state with specificity what the investigation would have revealed and how it would have altered the outcome of the case. *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989).

Here, Petitioner does not state with specificity what an investigation into accidental discharges would entail or how it would have altered the outcome of the case. While he baldly asserts that the type of firearm that was involved in the shoot has "a relatively light trigger pull" and "a significant history of inadvertent discharges," Petitioner offers no evidence or argument to support these statements. Indeed, as pointed out by counsel in his affidavit, such statements are contradicted by the testimony of the State's firearm expert, Ed Wallace. *See* Dkt. No. 16-11 at 29–31 (explaining that Glock nine-millimeter handguns do not "spontaneously fire" or discharge without the trigger being pulled, and do not have "hair triggers"). Thus, Petitioner's conclusory assertions are insufficient to support a claim for ineffective assistance of counsel. *Woodfox v. Cain*, 609 F.3d 774, 809 n.17 (5th Cir. 2010).

Similarly, Petitioner's allegations about the bullet's deflection prior to hitting the victim are conclusory, speculative, and unsupported in the record. Petitioner contends that an investigation into the bullet's deflection after it entered the wall would help demonstrate that he did not intend to murder the victim because it would be nearly impossible to predict the bullet's future trajectory. At a minimum, Petitioner argues that counsel should have reviewed the results of a 3D crime scene reconstruction conducted by the State and removed the portion of the wall where the bullet exited. As support, Petitioner cites the testimony of the State's crime scene

investigator, Robert Ross, who explained that a trajectory rod could not fit through the bullet hole in the wall because the bullet had hit a two-by-four stud.  Dkt. No. 2 at 5.  But nowhere in Mr. Ross's testimony did he state that the bullet deflected in a different direction after hitting the stud; rather, his testimony was that a trajectory rod could not be used because the bullet hole in the wood stud had closed a bit.  Dkt. No. 16-9 at 200–04.  Indeed, Petitioner provides no support for his theory that the bullet actually ricocheted when it went through the bedroom wall. His conclusory allegations are therefore insufficient to overcome the presumption of correctness attributed to the trial court's finding of counsel's competence.  *Miller*, 714 F.3d at 903.

Further, there is scant evidence that crime scene technicians set up a 3D scanner and mapped the crime scene as Petitioner contends.  While there is some mention in the record of a 3D scanner—*see* Dkt. No. 16-9 at 181 ("I, also, assisted in setting up a 3D scanner), 186 ("I took photographs, I helped with a scan . . .")—there is no definitive indication that such a scan was completed, much less that it would assist counsel in determining whether the bullet was deflected after it struck the wall stud.  As such, it was wholly reasonable for counsel not to investigate the existence or substance of the alleged 3D evidence.

Finally, even assuming a 3D scan existed that could help demonstrate that the bullet was deflected after hitting the wall stud, counsel still was not ineffective for failing to further investigate a theory based on Petitioner's intent.  This is because the jury did not necessarily need to find that Petitioner intentionally caused the victim's death for him to be convicted of murder. The first count in Petitioner's indictment charged Petitioner with felony murder, which requires only a showing that Petitioner committed an act "clearly dangerous to human life that caused the death of [the victim]" while Petitioner was in the course of committing another felony.  *See* Dkt. No. 16-2 at 7 (Indictment), 148–49 (Jury Charge).  Again, counsel has a duty to make reasonable

investigations or to make a reasonable decision that makes particular investigations unnecessary. *Strickland*, 466 U.S. at 699.  In this case, it was wholly reasonable for counsel not to conduct a further investigation into the possibility that the bullet was deflected in an attempt to show Petitioner could not have intended to kill the victim.  Accordingly, the state court's denial of this claim was not contrary to or an unreasonable application of *Strickland*.

    4.    <u>Uncalled Witnesses</u>

Petitioner next faults his trial counsel for failing to obtain an expert to discuss the bullet's deflection when it passed through the wall.  According to Petitioner, potential experts would include "ballistic experts involved in the training of room clearing and hostage rescue teams, experts in crime scene reconstructions knowledgeable in bullet trajectory deflection, medical experts on gunshot survival and others."  Dkt. No. 1 at 7.  However, Petitioner has not provided the name of any expert who would have testified as such.

Unsupported claims regarding uncalled expert witnesses "are speculative and disfavored by this Court as grounds for demonstrating ineffective assistance of counsel."  *Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002).  To prevail on an IATC claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate the witness was available to testify, delineate the content of the witness's proposed testimony, and show the testimony would have been favorable to the defense.  *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009); *Coble v. Quarterman*, 496 F.3d 430, 436 (5th Cir. 2007).  The requirements of showing availability and willingness to testify "[are] not a matter of formalism."  *Woodfox*, 609 F.3d at 808.  A petitioner must present evidence on these points as part of the burden of proving trial counsel could have found and presented witnesses, including expert witnesses.  *Id*.

Here, Petitioner laments that the jury never heard from a witness "to explain the extremely high odds against a person deliberately killing someone through an opaque wall with a single shot." Dkt. No. 2 at 3. But even assuming this proposed testimony would have been favorable to his defense, Petitioner has brought forth no evidence or affidavits from any expert to support his IATC claim. *Evans*, 285 F.3d at 377 (providing petitioner must "bring forth" evidence, such as affidavits, from uncalled witnesses, including expert witnesses, in support of an IATC claim). Indeed, Petitioner has not even provided the name of a witness who would testify in this manner, much less establish the witness was willing and able to testify at the time of Petitioner's trial. For this reason, Petitioner has not shown counsel's performance was deficient or that he was prejudiced by counsel's alleged error under *Strickland*.

5.    Cross-Examination

In his next claim for relief, Petitioner faults counsel for failing to adequately cross-examine the State's crime scene expert, Christina Vachon, "to demonstrate the virtual impossibility of deliberately trying to commit murder in the way this homicide occurred." Dkt. No. 1 at 7; Dkt. No. 2 at 7. Specifically, Petitioner contends counsel should have impeached Ms. Vachon's testimony concerning the lack of gunshot residue on the victim by having her address: (1) the fact that the gun was fired through a wall; (2) the fact that victim was standing another three feet or more from that wall; and (3) that any gunshot residue would likely reside in the room where the shot was fired.

Petitioner raised these allegations during his state habeas proceedings, and both the state habeas trial court and the Texas Court of Criminal Appeals concluded that Petitioner failed to prove counsel was ineffective. Dkt. Nos. 16-22; 16-24 at 45–51. As with Petitioner's previous IATC allegations, he fails to show that the state court's ruling on trial counsel's performance was

contrary to, or involved an unreasonable application of *Strickland* or that it was an unreasonable determination of the facts based on the evidence in the record.

Here, the state habeas court's implied factual finding that counsel's cross-examination of Ms. Vachon was adequate has not been rebutted with clear and convincing evidence. Indeed, a thorough review of the trial transcript indicates counsel provided effective cross-examination on several issues, including the State's decision not to test Petitioner's clothing for gunshot residue. Dkt. No. 16-10 at 18–20. Petitioner has not shown that counsel's strategic decision to question Ms. Vachon about the State's failure to test his clothing for gunshot residue as opposed to discussing further the lack of gunshot residue on the victim was unreasonable. This strategy was reasonable, and "[s]peculating about the effect of tinkering with the cross-examination questions is exactly the sort of hindsight that *Strickland* warns against." *See Castillo v. Stephens*, 640 Fed. App'x 283, 292 (5th Cir. 2016) (unpublished) (citing *Strickland*, 466 U.S. at 689).

"A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Cotton v. Cockrell*, 343 F.3d 746, 752–53 (5th Cir. 2003). Because counsel's decisions regarding cross-examination were strategic and reasonable, they "will not support an ineffective assistance claim." *United States v. Bernard*, 762 F.3d 467, 472 (5th Cir. 2014) (citation omitted). As a result, Petitioner has not shown counsel's performance was deficient. The state court's denial of this claim, therefore, was not an unreasonable application of *Strickland*.

6.   Cumulative Error

In his last IATC claim, Petitioner contends he is entitled to federal habeas relief because of counsel's cumulative errors. The Fifth Circuit has made it clear that cumulative-error analysis is

only appropriate where there is constitutional error to cumulate. *United States v. Delgado*, 672 F.3d 320, 344 (5th Cir. 2012) (en banc); *Derden v. McNeel*, 938 F.2d 605, 609 (5th Cir. 1991). Allegations that alone are insufficient to demonstrate constitutional error cannot be combined to create reversible error. *United States v. Moye*, 951 F.2d 59, 63 n. 7 (5th Cir. 1992) ("Because we find no merit to any of Moye's arguments of error, his claim of cumulative error must also fail."). "Meritless claims or claims that are not prejudicial cannot be cumulated, regardless of the total number raised." *Westley v. Johnson*, 83 F.3d 714, 726 (5th Cir. 1996) (citation omitted).

As discussed above, Petitioner has not shown a violation of his constitutional rights.  None of Petitioner's complaints about the performance of his trial counsel satisfy the *Strickland* analysis. Therefore, there is no error for this Court to cumulate. *United States v. Thomas*, 724 F.3d 632, 648 (5th Cir. 2013) ("[T]here is no precedent supporting the idea that a series of 'errors' that fail to meet the standard of objectively unreasonable can somehow cumulate to meet the high burden set forth in *Strickland*."); *United States v. Hall*, 455 F.3d 508, 520 (5th Cir. 2006) ("Our clear precedent indicates that ineffective assistance of counsel cannot be created from the accumulation of acceptable decisions and actions."); *Mullen v. Blackburn*, 808 F.2d 1143, 1147 (5th Cir. 1987) ("Twenty times zero equals zero.").  Because none of the errors alleged by Petitioner constituted a violation of his right to the effective assistance of counsel, the "cumulation" of these errors does not provide a basis for relief. *Coble*, 496 F.3d at 440; *Livingston v. Johnson*, 107 F.3d 297, 309 (5th Cir. 1997).

## B.   <u>Prosecutorial Misconduct</u> (Claim 5)

Petitioner next alleges that the prosecution committed misconduct by failing to produce potentially exculpatory evidence and by presenting misleading evidence concerning the crime scene.  Specifically, Petitioner contends the prosecution withheld evidence from a 3D scanner that

reconstructed the crime scene.  According to Petitioner, this 3D reconstruction would have been exculpatory because it would demonstrate that the gun was not fired in the direction of the victim. Petitioner also faults the prosecution for presenting perjured testimony concerning photographs taken of the crime scene. Both allegations were raised and rejected during Petitioner's state habeas corpus proceeding.  As discussed below, Petitioner fails to demonstrate the state court's rejection of these claims was either contrary to, or an unreasonable application of, Supreme Court precedent.

       1.    <u>The Suppression of Evidence</u>

Petitioner first contends the prosecution failed to disclose a 3D reconstruction of the crime scene.  "[S]uppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland,* 373 U.S. 83, 87 (1963).  To establish a *Brady* violation, a petitioner must demonstrate that (1) the prosecution suppressed evidence, (2) that evidence was favorable to the defense, and (3) the evidence was material to either guilt or punishment.  *Banks v. Dretke*, 540 U.S. 668, 691 (2004); *Graves v. Cockrell*, 351 F.3d 143, 153–54 (5th Cir. 2003).

Petitioner satisfies none of these requirements, as his allegations of suppressed evidence are conclusory, speculative, and unsupported in the record.  While Petitioner maintains that crime scene technicians set up a 3D scanner and mapped the crime scene, there is little evidence in the record that such a scan was actually conducted.  *See* Dkt. No. 16-9 at 181 ("I, also, assisted in setting up a 3D scanner), 186 ("I took photographs, I helped with a scan . . .").  Other than these brief references, Petitioner does not allege any facts to support or substantiate his claims that a 3D scan of the crime scene was obtained, much less suppressed by the prosecution.  Such conclusory allegations do not entitle a petitioner to habeas corpus relief.  *See Murphy v. Johnson*, 205 F.3d

809, 814 (5th Cir. 2000) ("Allegations that are merely 'conclusionary' or are purely speculative cannot support a *Brady* claim"); *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990) (holding "mere conclusory allegations do not raise a constitutional issue in a habeas proceeding").

Even assuming the 3D scan existed and was suppressed by the prosecution, Petitioner's *Brady* claim fails because he has not demonstrated the evidence was favorable or material. Evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *United States v. Bagley*, 473 U.S. 667, 684 (1985). Petitioner contends the 3D scan would have supported a theory that he could not have intended to kill the victim because the bullet traveled through a two-by-four in the wall and was deflected from its original course prior to striking her. But Petitioner fails to explain how a 3D rendering of the crime scene would somehow demonstrate the bullet's trajectory, much less how the bullet's trajectory relates to the issue of intent. Again, Petitioner's highly speculative and conclusory allegation does little, if anything, to establish the materiality of the missing evidence. *See Murphy*, 205 F.3d at 814.

In sum, Petitioner has not shown that the prosecution suppressed evidence of a 3D scan or that the 3D scan would have been favorable or material to the guilt-innocence or punishment phase of his trial. *Banks*, 540 U.S. at 691. Accordingly, he has not established a *Brady* violation, and thus fails to demonstrate that the state court's rejection of his claim was either contrary to, or an unreasonable application of, clearly established federal law. Relief is denied.

      2.    <u>Presenting False or Perjured Testimony</u>

In *Napue v. Illinois*, 360 U.S. 264 (1959), the Supreme Court held that a criminal defendant is denied due process when the State knowingly uses false or perjured testimony or allows false testimony to go uncorrected at trial. *See also Giglio v. United States*, 405 U.S. 150 (1972). A

petitioner seeking to obtain relief on such a claim must show that (1) the testimony is false, (2) the prosecution knew that the testimony was false, and (3) the testimony was material.  *Reed v. Quarterman*, 504 F.3d 465, 473 (5th Cir. 2007); *Kutzner v. Johnson*, 242 F.3d 605, 609 (5th Cir. 2001).  False testimony is only material if there was a reasonable likelihood that it affected the jury's verdict.  *Giglio*, 405 U.S. at 153–54; *Barrientes v. Johnson*, 221 F.3d 741, 753 (5th Cir. 2000).

Here, Petitioner contends the State presented perjured testimony concerning crime scene photographs that were presented at trial.  According to Petitioner, the prosecution misled the jury to believe that the photographs represented how the apartment looked at the time law enforcement arrived on the scene rather than acknowledging that some of the photographs were taken more than a month after the shooting.  This allegedly created confusion for the jury concerning the relative positions of the shooter and the victim because some items, including Petitioner's wheelchair, had been moved from their original locations by law enforcement officials.

Similar to his *Brady* allegation, Petitioner has offered no evidence to substantiate his claims concerning the timing of the crime scene photographs.  Under Rule 2(c) of the Rules Governing Section 2254 Cases, a petitioner is required to plead facts in support of his claims.  "Absent evidence in the record," the undersigned will not "consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition . . . , unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value."  *Ford v. Davis*, 910 F.3d 232, 235 (5th Cir. 2018).  Because Petitioner offers no facts or evidence to support his allegation of perjury, his conclusory claim is insufficient to support habeas relief.  *See Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (stating a petitioner is not entitled to relief on the basis of a conclusory allegation).

Moreover, Petitioner's assertion that the prosecution mislead the jury to believe that the photographs depicted how the room appeared at the time of the shooting is contradicted by the record.  Detective Onesimo Perez, a crime scene specialist with the San Antonio Police Department, testified that the photographs and video admitted as evidence were a fair and accurate depiction of the crime scene looked when he responded.  Dkt. No. 16-9 at 166–67, 177–79. Detective Perez even clarified that other officers had already responded and secured the scene by the time he arrived.  *Id*. at 169.  Consequently, habeas relief is denied, as Petitioner has not demonstrated the state court's rejection of his claims was either contrary to, or an unreasonable application of, clearly established federal law.

**C.**    **Trial Court Error (Claims 2, 6)**

In his final two allegations, Petitioner contends the trial court erred in denying his request for a jury instruction on the lesser included offense of criminally negligent homicide and that the Texas Fourth Court of Appeals erred in affirming the trial court's decision.  According to Petitioner, the evidence presented at trial showed that he could not have intentionally shot the victim because the bullet traveled through a wall before striking her, thus making it more likely that the shooting was an accident.  The trial court denied the instruction because there was no evidence presented to the jury that shows that, if Petitioner was guilty, he was guilty *only* of criminally negligent homicide.  Dkt. No. 16-11 at 65.  Petitioner unsuccessfully challenged the trial court's ruling on both on direct appeal and during his state habeas proceedings.

Claims of improper jury instruction or rejection of a requested jury instruction in state criminal trials do not generally form the basis for federal habeas relief.  *Galvan v. Cockrell*, 293 F.3d 760, 764–65 (5th Cir. 2002) (citing *Estelle v. McGuire*, 502 U.S. 62, 71–72 (1991) (stating that federal habeas courts do not grant relief solely on the basis that a jury charge was erroneous)).

The relevant inquiry is whether the failure to give an instruction "by itself so infected the entire trial that the resulting conviction violates due process." *Id*. at 764–65 (citing *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).  But in the context of a non-capital murder case, the Fifth Circuit has already determined that "the failure to give an instruction on a lesser included offense does not raise a federal constitutional issue." *Valles v. Lynaugh*, 835 F.2d 126, 127 (5th Cir. 1988); *see Alexander v. McCotter*, 775 F.2d 595, 601 (5th Cir. 1985) (holding lesser included offense instruction is not a federal constitutional matter in non-capital cases).

The Texas Fourth Court of Appeals concluded that the evidence did not support an instruction on criminally negligent homicide, and the Texas Court of Criminal Appeals agreed. Because these decisions do not raise a federal constitutional issue, this Court must defer to the state courts' interpretation of its law for whether a lesser included offense instruction was warranted.  *Creel v. Johnson*, 162 F.3d 385, 390–91 (5th Cir. 1998) (citing *Valles*, 835 F.2d at 128); *see also Trevino v. Johnson*, 168 F.3d 173, 184 (5th Cir. 1999) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").  Habeas relief is therefore denied.

## IV.  Certificate of Appealability

The Court must now determine whether to issue a certificate of appealability (COA).  *See* Rule 11(a) of the Rules Governing § 2254 Proceedings; *Miller-El v. Cockrell,* 537 U.S. 322, 335–36 (2003) (citing 28 U.S.C. § 2253(c)(1)).  A COA may issue only if a petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  If a district court rejects a petitioner's constitutional claims on the merits, the petitioner must demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel,* 529 U.S. 473, 484 (2000).  This requires a petitioner to show "that

reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El*, 537 U.S. at 336 (citation omitted).  A district court may deny a COA *sua sponte* without requiring further briefing or argument.  *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).  For the reasons set forth above, the Court concludes that jurists of reason would not debate the conclusion that Petitioner was not entitled to federal habeas relief.  As such, a COA will not issue.

### V.  <u>Conclusion and Order</u>

Petitioner has failed to establish that the state court's rejection of the aforementioned claims on the merits during either his direct appeal or state habeas corpus proceedings was either (1) contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) based on an unreasonable determination of the facts in light of the evidence presented in the petitioner's state trial, appellate, and habeas corpus proceedings.  As a result, Petitioner's federal habeas corpus petition does not warrant federal habeas corpus relief.

Accordingly, based on the foregoing reasons, **IT IS HEREBY ORDERED** that:

1.    Habeas corpus relief is **DENIED** and Petitioner Benjamin Poehlmann's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Dkt. No. 1) is **DISMISSED WITH PREJUDICE**;

2.    No Certificate of Appealability shall issue in this case; and

3.      All remaining motions, if any, are **DENIED** as moot, and this case is now

**CLOSED**.

It is so **ORDERED.**

**SIGNED** this <u>13th</u> day of June, 2022.

_____
ORLANDO L. GARCIA
CHIEF UNITED STATES DISTRICT JUDGE